## HOWARD *vs.* THE CITY FIRE INSURANCE COMPANY.

A witness may, on cross-examination, and with a view to affect his credit, be asked questions upon subjects unconnected with the issue; but the answers which may be given cannot be contradicted.

Accordingly, in an action on a policy of insurance, where the defence was a fraudulent over-estimate of the quantity and value of the property insured, the principal witness for the plaintiff was allowed to be asked on cross-examination whether he had not made false representations as to the plaintiff's responsibility.

Where it was a question on the trial what amount of merchandize was contained in a dry goods' store at the time it was burned down, the defendant was permitted to ask a witness who had been in the store, whether there was a greater or less quantity of goods than was contained in his own store, which was furnished with similar goods, and of which an inventory had been taken.

Where an action on a policy of insurance was defended on the ground that the plaintiff had been guilty of false swearing in his affidavit forming a part of the preliminary proofs; *held* that such affidavit, though given in evidence by the defendant for the purpose of enabling him to contradict it, was not evidence for the plaintiff of a fact stated in it.

ERROR to the superior court of the city of New-York. Hugh B. Howard brought assumpsit in the court below against the City Fire Insurance Company on a policy of insurance against

loss by fire. *Non-assumpsit* having been pleaded, the cause was tried in the court below in May, 1843. The policy, which was given in evidence, bore date April 17th, 1841; and by it the defendants insured the plaintiff to the amount of $9850, on merchandise, and $150 on store furniture in his store, No. 146 Pearl-street, for six months. The 9th section of the "conditions" annexed to the policy, and which were referred to therein, provided that in case of a loss, the insured should forthwith give notice thereof in writing to the company, and should as soon after as possible deliver a particular account of the loss, and should accompany the same "with their oath or affirmation declaring the said account to be just and true; showing also whether any and what other insurances have been made on the same property, *and what was the whole value of the subject insured,*" &c. with certain other particulars; and also that the insured should produce a certificate of a magistrate or notary public, stating that he had examined the circumstances and was acquainted with the character of the claimant, and believed the loss occurred by misfortune and not by fraud. Until these papers were produced the loss was not to be payable. The section closed with this sentence: "All fraud or false swearing shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against the insurers on this policy."

It was proved that the store and its contents were destroyed by fire, in the night between the 7th and 8th days of May, 1841. Notice was immediately given to the defendants, and on the 8th of May the preliminary proofs were delivered. These consisted, among other things, of a written statement of the plaintiff, setting forth the several matters required to be stated by the provision in the conditions before referred to; in which he declared that "the true and actual value, and the actual cash value of all the said insured merchandise, at the time of said fire and loss, was the sum of $45,000, and some further amount which it is impossible to state with accuracy, but believes to be seven or eight hundred dollars." The statement proceeds to give an account in detail of the manner in which the plaintiff

arrived at this estimate of the value of his goods, nearly all his books of account having been burned in the store; and gives schedules containing an account of stock which had been preserved. It sets forth that the plaintiff had three other policies covering the same merchandise; the aggregate amount insured, including the defendants' policy, being forty thousand dollars. This statement was verified by the oath of the plaintiff. Annexed to it there was an affidavit of Jacob A. Howard, the plaintiff's brother, who was a clerk in the store, corroborating the material statements of the plaintiff, and adding the declaration of his belief that the said plaintiff's statement was true. The plaintiff having made out a *prima facie* case, rested.

The defence was, that the plaintiff had over-estimated the quantity and value of the merchandise insured, and had been guilty of false swearing in his statement on that subject in the preliminary proofs, with intent to defraud the insurers; and the defendants gave evidence tending to show that the stock of goods at the time of the fire did not exceed fifteen thousand dollars in value.

In answer to this evidence, the plaintiff called Jacob A. Howard, who was examined at great length touching the amount of merchandise and the circumstances of the fire; the tendency of his testimony being to corroborate the statements in the preliminary proofs. It appeared that he had the principal management of the business of the store, for his brother the plaintiff, who was but little acquainted with business; that the plaintiff was a young man, and unmarried, and came to the city of New-York at the witness' suggestion, and commenced business in August, 1839, having previously lived with his father in Dutchess county; that he brought with him four hundred dollars, which was all the capital he had, but that he expected soon to receive about eight thousand dollars from his father; that the witness had formerly been in business in New-York, and had failed, and was largely indebted. The witness said he made the principal part of the purchases of goods for the plaintiff. The defendants' counsel asked the witness this question: " Did you, in making purchases for the plaintiff, rep

resent that he had a capital of $10,000?" The plaintiff's counsel objected to the question, but the court overruled the objection and suffered it to be put. The witness admitted that he had so stated to several persons.

In the course of the examination as to the quantity and value of the merchandise, the witnesses had spoken of the amount of goods in the store in December, 1840, as well as at the time of the fire, and had mentioned the additions made to the stock after the date mentioned. Among others, Eli West was examined on the part of the defendants. He was a clerk in the store of Richards & Co., merchants in the same line of business, which adjoined the plaintiff's, and was burned with it. He proved that the two stores were of nearly the same dimensions. The defendants then proposed to show by him the amount of goods in the store of Richards & Co. in December, 1840, by the inventory then taken, and the relative amount of goods in each store, according to the appearance of the two stores of goods as observed by the witness, who had often been in the plaintiff's store, with a view to prove that the plaintiff's store then contained a smaller amount of merchandise than had been represented by his witnesses. The plaintiff's coun sel objected to the evidence, but the court overruled the objec tion, and the witness gave testimony on the subject tending to diminish the amount in the plaintiff's store from that stated by the plaintiff's witnesses. He said, among other things, that so many goods as were said to be in the store, could not be put into it. It would fill it up.

In making out his case the plaintiff had not produced the preliminary proofs, but gave general evidence that they had been furnished. The defendants' counsel gave them in evidence with a sole view, as stated, of laying a foundation to prove them untrue, and not as general evidence in the cause. The plaintiff's counsel at the same time insisted that if they were read at all they must be deemed evidence for the plaintiff as well as for the defendant.

After the evidence was closed the plaintiff's counsel desired the court to instruct the jury that the affidavit of the plaintiff

forming part of the preliminary proofs, was evidence of the facts contained in it, to be weighed and considered by the jury. The court refused to give that instruction, but in the course of its charge advised them that the affidavit was not evidence of any thing except of the fact that such an affidavit had been made in performance of the condition in the contract requiring the plaintiff to furnish preliminary proofs. The plaintiff excepted. Verdict and judgment for defendants.

*C. O'Conor,* for the plaintiff in error. The court below erred in permitting the witness Howard to be examined as to a distinct and independent act of fraud. (*Jackson* v. *Osborn,* 2 *Wend.* 555, 558.)

2. The evidence of West as to the comparison between the goods in the two stores was improper. (*The Phœnix Fire Ins Co.* v. *Philip,* 13 *Wend.* 81.)

3. The plaintiff's affidavit having been read by the de fendants, was evidence in the cause, and the jury should have been instructed to weigh and consider it with the other evidence. (*Jackson* v. *Ball,* 2 *Mood. & Rob.* 152; *The United States* v. *Wood,* 14 *Pet.* 438, 459; *Alden* v. *Dewey,* 1 *Story's Rep.* 340; 1 *Stark. Ev.* 49, note 1; *Id.* 293; 11 *John.* 246, 260; 3 *Hill,* 146; 3 *John.* 427; 9 *id.* 141; 10 *id.* 38, 365; 11 *id.* 161.)

*J. P. Hall,* for the defendants in error, cited, to the last point *The Madison County Bank* v. *Gould,* (5 *Hill,* 309.)

*By the Court,* JEWETT, J. It is a familiar rule that the credit of a witness may be impeached, either by a cross-examination, by general evidence affecting his character, or by proof that he has before done or said that which is inconsistent with his testimony on the trial. The fact inquired of by the question objected to, in the case of the witness Howard, was not in the least connected with the subject of the inquiry in the suit. It was purely collateral. Whatever therefore the answer of the witness might have been, it would have been conclusive. No

evidence would have been admissible to contradict it. But, for the purpose of affecting the credit of the witness, I think the question was proper, and that the objection was rightly over-ruled. (*Stark. Ev. part* 2, 134, § 22, *p.* 145, § 28.)

The value of the plaintiff's stock of goods at the time of the fire was a question directly in issue ; and to ascertain that, the amount of his stock at different and given periods, and the pur-chases and sales made by him during those periods had been inquired about and evidence had been given upon that subject. The witness Howard had testified that the value of the plain-tiff's goods at the time of the fire was upwards of forty-five thousand dollars, and had given evidence as to the amount and value at previous periods. Other witnesses having greater or less means of knowledge on the subject, testified upon the ques-tion. In this state of the case, the defendants, in order to show facts from which the jury would be justified in the conclusion that the quantity and value had been greatly over-estimated by the plaintiff's witnesses, called the witness West. His evidence was not direct and positive, as to the fact in question ; yet the facts and circumstances stated by him were such, that if the jury gave credit to their truth, a reasonable presumption or in-ference might well be founded upon them, that the quantity and value of the merchandize destroyed by the fire was much less than the evidence before given, tended to establish ; and in my judgment, the evidence was competent and relevant for the consideration of the jury. It was not of the character of the evidence offered and rejected in *The Phœnix Fire Ins. Co.* v. *Philip,* (13 *Wend.* 81.) There the action was upon a policy of insurance on the stock of merchandise and materials of the plaintiff, a hair-worker. The amount insured was $12,000. The property was destroyed by fire, and the plain-tiff claimed $11,099,56, and gave evidence tending to show that to be the amount of his loss. The defendant, to show that the value of the merchandise was over-estimated, proposed to prove the amount of stock of the largest dealer in hair in the city. It was there held, and rightly too, as I think, that the evi-dence offered was too loose and unsatisfactory. It was the

mere opinion of the witness, that other dealers in the same articles had much less stock than the plaintiff claimed to have had. But I do not see that the principle decided in that case has any application to the question raised in this.

The plaintiff on the trial proved that he had furnished to the defendants preliminary proofs required by the conditions of the policy of insurance, and an affidavit made by the plaintiff, with schedules annexed containing a particular account of his loss and damage in consequence of the fire. The defendants read to the jury such preliminary proofs, for the purpose of showing from the evidence in the case, that the plaintiff had forfeited all claim on the defendants by reason of some fraud or false swearing contained in the plaintiff's preliminary proofs, pursuant to the last clause of said ninth section of the conditions. The charge upon the effect of that evidence, which was excep ted to, presents the only remaining question made by the bill of exceptions. The principle decided in the case of *The Madison Co. Bank* v. *Gould,* (5 *Hill,* 309,) I think is applicable, and must control this case. The preliminary proofs were furnished, to comply with a condition of the policy upon which his claim to the insurance depended. Unless that condition was shown, *prima facie,* to have been performed, the plaintiff would have failed to make out a presumptive right to recover. Having given that proof, the defendants had the right to show, if they could, that the plaintiff had been guilty of " fraud or false swearing" in those papers, and if shown, it would, according to the condition, bar the plaintiff of all remedy against the defendants on the policy. To do that, it became necessary to read to the jury the affidavit of the plaintiff, in order to apply the contradictory evidence given. With that view of the question, the court below held that it was proper for the defendants to read the affidavit, and that it was not to be regarded by the jury as evidence in favor of the plaintiff of the facts asserted therein. In this I think the court correctly decided. After the defendants gave evidence tending to impeach the facts con tained in the affidavit, the plaintiff had no right to the benefit

of the affidavit, as rebutting evidence of the facts thereby asserted, on the question of the falsity of the matters represented by it, or of the fraud imputed. The judgment must be affirmed

Judgment affirmed.