MASSACHUSETTS BONDING & INS. CO. v.
TEXAS FINANCE CORPORATION.*
(No. 8929.)

(Court of Civil Appeals of Texas. Dallas.
Jan. 19, 1924. Rehearing Denied
Feb. 16, 1924.)

1. Insurance ⬥146(3)—Construction in indemnity insurance in favor of insured.

Where a contract of indemnity insurance is susceptible of a reasonable construction, the adoption of which would permit a recovery, such construction should be adopted in lieu of any other reasonable construction which would deny a recovery.

2. Insurance ⬥430—"Conversion" of proceeds of mortgaged property held covered by policy of indemnity insurance.

Under an insurance policy indemnifying a company engaged in loaning money to retail automobile dealers to purchase cars from the manufacturer from any loss that the company might sustain by the larceny, embezzlement, conversion, or criminal misappropriation of such purchasers, it was unnecessary in order to predicate the liability of the insurer that the offending parties should be technically guilty of any of the offenses named in the policy; the conversion of the proceeds of the sale of the cars, though not in violation of the criminal law, being such a conversion as was covered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conversion.]

3. Chattel mortgages ⬥190(1)—Statute held not to prevent contract by which owner of stock used in the regular course of business could surrender same to creditor by means of a mortgage.

Rev. St. art. 3970, providing that a mortgage on a stock of goods daily exposed to sale in the regular course of business shall be void, does not prevent the parties to a mortgage from entering into a valid contract under which the owner of the stock could surrender an interest therein to his creditor by means of a mortgage in his favor, and thereby establish a relation that when the owner sold a portion of such stock, a duty would rest upon him to deliver the proceeds to his creditor.

4. Insurance ⬥430—Agreement to turn over proceeds of mortgaged property may be made subject of indemnity insurance.

The duty of a mortgagor, in carrying out an agreement under a mortgage to turn over the proceeds realized from the sale of mortgaged property, might be made the subject of indemnity insurance, and such as the parties could denominate a failure to perform it, a conversion of so much of the proceeds as represented the creditor's interest.

5. Insurance ⬥662(1)—Evidence as to performance by insured of his duty to give notice to insurer admissible when put in issue.

In an action on an insurance policy indemnifying insured against any loss by reason of loaning money to purchasers of automobiles, where the insurer by its pleadings put in issue the performance of the duty of insured to give notice of its claim under the contract of insurance, evidence as to the manner in which insured first discovered the default of the purchasers and the claim it made under the contract of insurance was admissible.

On Motion for Rehearing.

6. Insurance ⬥665(1)—Finding that insurer knew purpose of indemnity policy sustained.

In an action on an indemnity policy by which insured, who loaned money to purchasers of automobiles, was indemnified against loss, evidence held to sustain finding that insurer knew that insured desired protection from a possible failure of the purchasers to pay over the proceeds of cars, and that this was insured's sole purpose in purchasing insurance, and that insurer issued the policy with full knowledge of the fact, and undertook to give the insurance desired.

Appeal from District Court, Dallas County; E. B. Meese, Judge.

Action by the Texas Finance Corporation against the Massachusetts Bonding & Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, for appellant.

Grace Fitzgerald and John T. Gano, both of Dallas, for appellee.

JONES, C. J. Appellee, the Texas Finance Corporation, recovered judgment against appellant, the Massachusetts Bonding & Insurance Company, in the sum of $5,600, with 6 per cent. interest from September 8, 1920. The suit was filed on November 4, 1920, and the judgment was awarded on April 29, 1922. Appellant has duly perfected its appeal to this court.

Appellee, a corporation, with its place of business in the city of Dallas, was engaged in the business of lending money to retail dealers in automobiles; the money loaned was for the use of the automobile dealer in paying in part the purchase price of the cars bought from the manufacturer. Appellee's method of making the loan was to advance to the said dealer such an amount of money as, when added to the amount paid by the said dealer, would fully pay the manufacturer for the car on which the money was advanced. Appellee would take from the said dealer a note bearing 10 per cent. interest from date for the amount of money advanced, and also take from the said dealer a chattel mortgage on the car on which the loan was made to secure the payment of said note. The automobile dealer would be permitted to retain possession of the car, and to place same in a sales room, and to use it for demonstrating purposes. The dealer was also given permission to sell said car to any purchaser that might be found, but, when

sold, the note was to be discharged either by payment in cash, or by part cash and the substitution of the note and mortgage of the purchaser assigned by the dealer to appellee. The permission given by appellee to the said dealer to retain possession of the car, or cars, mortgaged to appellee, and sell same, was given on the condition that the said dealer would faithfully account to appellee for the sale of the car.

Appellant is a corporation doing, in the state of Texas, among other things, the business of writing indemnity and fidelity insurance.

On the 9th day of September, 1919, for a valuable consideration, appellant issued its bond of insurance in favor of appellee, which, among others, contained the following recital:

"* * * Now, therefore, in consideration of the premises, the Massachusetts Bonding & Insurance Company, of Boston, Mass., (hereinafter called the company) covenants and agrees with the said insured that, if application is made for a certificate, protecting the insured under the terms of this bond, the company will, after it elects to become bound for such purchaser, execute and deliver a certificate on behalf of such purchaser, reciting therein that such certificate is given pursuant to the provision of this bond, and also reciting the name of the purchaser, the description of the automobile, the amount for which the company acknowledged themselves bound, the amount of the premium received, and the period for which the company will be bound; and when such certificate shall have been delivered to the insured, the company shall become bound hereunder to the insured for the term provided in the said certificate, and will make good and reimburse said insured for any direct pecuniary loss or damage that the insured may sustain, caused by the larceny, embezzlement, conversion, or criminal misappropriation by, or with the connivance of, the purchaser of the automobile described in the said certificate, not exceeding the amount named in the certificate, and in no event to exceed the amount of the unpaid installments of the purchase price of said automobile exclusive of any interest thereon after default in the punctual payment of any thereof, as the case may be. * * *"

The bond issued was on the usual form used by the company for writing fidelity insurance, but did not accurately describe appellee, the business in which it was actually engaged, and the character of indemnity that was really undertaken by appellee; so after its issuance and on the 7th day of October, 1919, an indorsement signed by appellant was made on said bond, evidently intending to make said bond and the certificates of fidelity insurance to be issued under it conform to the business in which appellee was engaged. The indorsement is as follows:

"It is understood and agreed that the Texas Finance Corporation does not sell automobiles to the individuals, firm, and corporations referred to as 'purchasers,' in the attached bond, but lends money upon the security of notes, contracts, and leases executed by the 'purchasers' in connection with the purchase of automobiles."

The Texas American Company and its successor in business, the Holt Motor Company, were retail dealers in automobiles, and borrowed money from appellee to pay, in part, the purchase price of cars purchased from the manufacturer, each executing a note to appellee for the amount used to complete payment of the purchase price, together with a chattel mortgage on the specific car on which money was advanced for the said purchase price. When this transaction was had, appellee, under the terms of the bond issued by appellant, would make written application to appellant for its certificate covering the risk assumed by appellee in permitting the said dealer to retain possession of the car and sell same. This application would name the retail price for which the car was to be sold, the principal sum in the note, and the amount that had been paid by the maker of the note in cash for the car. If this application was favorably passed upon, the certificates of indemnity would be issued by appellant to appellee under the terms of the bond.

During the time of the life of this bond, appellant issued to appellee, among others, four certificates indemnifying it in reference to four notes aggregating the principal sum of $5,600, each note being secured by a chattel mortgage on the car, for which the money had been advanced to complete its purchase price, and each mortgage duly recorded in the county clerk's office of Dallas county. One of these certificates secured a note in the principal sum of $1,200, of date December 5, 1919. The car mortgaged to secure its payment had the trade-name, "American Six," and was a touring car of the 1920 model. The price paid by the dealer to the manufacturer was $1,510, and of this sum $310 was paid by the dealer, and the remainder of $1,200 furnished by appellee, for which the said note was given. This certificate was issued on December 6, 1919.

A second note was for the sum of $1,600, of date December 6, 1919, was secured by a chattel mortgage on a 2½-ton Bethelem truck of the 1920 model, for which the manufacturer was paid $1,992.31, of which sum the dealer paid $392.31, and the appellee furnished the remainder of $1,600. This certificate was issued on December 6, 1919.

A third note was for $1,200, executed by Holt Motor Company, of date December 29, 1919, in the principal sum of $1,200, and secured by a chattel mortgage on an American Six automobile of the 1920 model, mortgage being duly recorded. The manufacturer received $1,550 for this car, of which sum the dealer paid $350, and the $1,200 was

furnished by appellee. This certificate was issued on the 31st day of December, 1919.

A fourth note was in the principal sum of $1,600, of date April 21, 1920, and secured by a chattel mortgage on a 1½-ton Bethelem truck, which mortgage was duly recorded. The manufacturer received $1,997.40 for this truck, of which sum the dealer paid $397.40, and appellee furnished the remainder of $1,600. This certificate was issued the 22d day of April, 1920. A number of other certificates were issued on other cars but on which the dealer fully performed its contract with appellee in delivering to it the proceeds of the sale of the cars.

When it was discovered by appellee that the dealer had sold these cars, and failed to account for the proceeds, appellee at once informed appellant of this fact, and duly made and presented an itemized account under the four above-named certificates, and claimed remuneration in the full amount covered by each certificate. Appellant denied liability under each of the four certificates of indemnity, on the general ground that neither the bond nor the certificates covered the kind of loss sustained by appellee, in that the facts did not show that the loss was caused either by larceny, embezzlement, conversion, or criminal misappropriation.

Upon appellant's denial of liability, suit was filed by appellee in the district court of Dallas county, and, by appropriate pleadings, a recovery was sought on the bond in the full amount of the certificates of indemnity, aggregating the principal sum of $5,600, together with interest and attorney fees on each of the four notes alleged to have been indemnified by the said certificates. Appellant answered by general and special exceptions, general denial, and by special pleas raising all the defenses which will hereafter be noticed.

Appellee, by way of reply to appellant's answer, to the effect that the facts as alleged by appellee did not show liability for the reason that such allegations did not show that the dealer had been guilty of either the crime of larceny, embezzlement, conversion, or criminal misappropriation in its supplemental petition, pleaded estoppel on the part of appellant, based on the ground that, with full knowledge of the character of the risk it was assuming, it issued its said certificates of indemnity, and received payment of the premiums thereon. Appellee, by trial amendment, alleged the value of the cars when they were sold by the dealer to have been the respective purchase prices paid for same.

The case was tried to a jury, and the only issues submitted by the trial court were special issues as to the value of each of the cars at the time they were sold by the dealer. In response to these special issues the jury found these values to be as alleged by appellee in its said trial amendment. Appellant seasonably requested a peremptory instruction in its favor, which was refused by the court; and, in line with its contention that there was no liability, duly excepted to the court's charge. Each of the parties filed motions for judgment. The trial court overruled appellant's motion and granted appellee's to the extent of the principal sum named in each of the four certificates, together with interest thereon at the rate of 6 per cent. per annum from September 8, 1920, and judgment was accordingly entered in favor of appellee for the principal sum of $5,600, with interest at said rate from said date.

By appropriate assignments of error, appellant challenged the correctness of this judgment, and prays this court, (1) to reverse and render this cause in its favor, and (2) in the alternative, if not entitled to this relief, then to reverse and remand the case. It contends that it guaranteed the fidelity of the Texas American Company and the Holt Motor Company only in the event that loss was sustained as the result of acts committed by them that come within the definition of the offense of larceny, embezzlement, conversion, or criminal misappropriation, and that, as the undisputed evidence shows that neither the Texas American Company nor the Holt Motor Company committed such acts in their failure to account to appellee for the proceeds of sale of the respective cars, no recovery on the bond could be allowed. Appellant's contention, therefore, is that, unless a prima facie case in a criminal prosecution could be maintained against the parties, whose fidelity the bond guaranteed, no liability against it could be asserted, notwithstanding the loss occurred by the commission of the very acts that formed the basis of its contract of indemnity with appellee.

The correctness of this contention must be determined by a construction of the terms of the contract of insurance when such contract is considered in the light of the nature of the risk that manifestly formed the basis of the contract with consideration of the purpose of the parties in bringing it forth. Joyce on Ins. (2d Ed.) § 276, subd. (b), and authorities cited in note.

[1] It must be borne in mind that the rule of construction of a contract of indemnity and fidelity insurance is the same as in other contracts of insurance; that is, if the contract is susceptible of a reasonable construction, the adoption of which would permit a recovery, such construction should be adopted in lieu of any other reasonable construction which, if adopted, would deny a recovery.

[2] Appellant was made fully acquainted with the fact that appellee desired protection from financial loss against a possible

failure of either the Texas American Company or the Holt Motor Company to account for and pay over to appellee the proceeds of the sale of each of the four cars on which appellee held its mortgage. Appellant knew this was the sole purpose of appellee's purchase of the insurance. With full knowledge in this respect, it issued its indemnity bond with the indorsement thereon showing the character of business in which appellee was engaged, and undertook to give it the insurance desired. To say that it is not responsible on a loss occurring from the commission of the identical acts by the one whose fidelity in this very respect was guaranteed, viz. the failure to account for and pay over the proceeds of the mortgaged automobiles, would be to ignore the clear and manifest intention of the parties when they executed the contract. The contention of appellant in this respect can only be maintained on the assumption that, knowing the purpose for which appellee purchased the insurance, it delivered to appellee its bond and certificates which failed of this purpose; and that appellee knowingly contracted itself out of court in any suit for indemnity for loss from the very acts of the parties it is here complaining.

We therefore hold that the contract of indemnity in this case does not make it a prerequisite to a recovery that the offending parties should be technically guilty of any of the various offenses named in the bond; that the conversion of the proceeds of the sale of the cars, though perhaps not in violation of a criminal law, was such conversion as is comprehended by this contract of insurance. The assignments of error in this respect are overruled. Joyce on Ins. (2d Ed.) § 2766; Griffin v. Zuber, 52 Tex. Civ. App. 288, 113 S. W. 961; City Trust, Safe Deposit & Surety Co. of Phila. v. Lee, 204 Ill. 69, 68 N. E. 485; Dominion Trust Co. v. Nat. Surety Co., 221 Fed. 618, 137 C. C. A. 342, Ann. Cas. 1917C, 447.

[3, 4] It is also contended by appellant that under article 3970 of our Revised Statutes, the mortgages on the four automobiles given to appellee by the Texas American Company and the Holt Motor Company are void; that by reason of this fact appellee had no valid lien on the automobiles, and, consequently, no title or interest therein; and that there existed no such relation between the alleged mortgagors and mortgagee which could be made a basis for a recovery on fidelity insurance, as the companies merely owed appellee an unsecured debt. Said article reads as follows:

"Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares, or merchandise, daily exposed to sale in parcels in the regular course of the business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business by sale of said goods by said owner, shall be deemed fraudulent and void."

This article has been held to include a stock of automobiles, when held by a dealer in his salesroom and daily exposed to sale, and void as against a purchaser of an automobile from said stock. J. I. Case Threshing Machine Co. v. Lipper (Tex. Civ. App.) 181 S. W. 236.

This case does not go to the extent of holding that such mortgage is void as between the parties. The evident intention of the article' was to protect those who purchased from a stock of goods, wares, and merchandise daily exposed for sale, and bona fide creditors. Notwithstanding the statute, we see no reason why the parties as between themselves cannot enter into a valid contract under which the owner of the said stock could surrender, as between himself and his creditor, an interest in said stock to said creditor by means of a mortgage in the creditor's favor, and thereby establish such a relation between them as that, when the owner sold such portion of said stock, a duty would rest upon him to deliver the proceeds of said sale to his creditor. This relation would be such that his fidelity in carrying out the agreement and performing his duty under the mortgage would be a subject of fidelity insurance, and such as the parties could denominate a failure to perform it a conversion of so much of the proceeds of the sale as represented the creditor's interest.

Complaint is made of the failure of appellee to prove the market value of the cars at the time they were sold by the respective mortgagors. We have examined this evidence carefully, and hold that it was not only sufficient to warrant the court in submitting the issue of value to the jury, but also sufficient to sustain the findings thereon, and the assignments of error on this issue are overruled.

[5] Complaint is also made of the introduction of certain evidence by appellee. We have carefully examined the assignments of error in this respect, and believe that they are not well taken. It was necessary for appellee to show that it performed its duty under the bond of insurance to discover and report to appellant any violation of duty by the mortgagors. It was therefore admissible for appellee to offer testimony as to the manner in which it had first discovered the default of the said mortgagors. It was also admissible for appellee to introduce in evidence the claim it made against appellant under its contract of insurance, because by the terms of insurance this 'claim must be made when appellee discovered the default of the mortgagors or recovery would be denied. Appellant, by its pleadings, put in issue the performance of this duty by appellee, and the evidence was thereby rendered nec-

essary. These assignments of error are over-ruled.

Finding no reversible error, the case will be affirmed.

Affirmed.

## On Motion for Rehearing.

[6] Appellant has filed a very able and elaborate motion for rehearing in this cause. In this motion it challenges the correctness of the finding of the court embodied in the following paragraph of the original opinion:

"Appellant was made fully acquainted with the fact that appellee desired protection from financial loss against a possible failure of either the Texas American Company or the Holt Motor Company to account for and pay over to appellee the proceeds of the sale of each of the four cars on which appellee held its mortgage. Appellant knew this was the sole purpose of appellee's purchase of the insurance. With full knowledge in this respect it issued its indemnity bond with the indorsement thereon, showing the character of business in which appellee was engaged, and undertook to give it the insurance desired."

It is claimed by appellant that there is no direct evidence in the record that would warrant such finding, and that the only circumstance upon which such finding could be based is the indorsement placed on the bond, and that this, in itself, is insufficient to warrant the court in making the above finding. In this statement appellant is in error.

E. R. Burget, vice president, and manager of appellee, in reference to the knowledge of appellant as to the kind of guarantee appellee desired and believed it was receiving, testified as follows:

"At the time of the execution and delivery of this bond and of the supplement, and of each of the four certificates, Mr. Mike Murphy knew of the conditions attending the loans that I have made."

Mike Murphy was the agent of appellant who represented it in all the business negotiations carried on between appellant and appellee, and through him the indorsement was placed on the bond referred to by the witness as a supplement.

In addition to this, the witness also testified that when either the Texas American Company or the Holt Motor Company had purchased a car and a portion of the purchase money had been furnished said purchaser by appellee to make the payment, the witness had carried both the note and the mortgage received by appellee from the purchaser to Mr. Murphy; that he had a conversation with him in reference thereto, and he then received the certificate of fidelity insurance from Mr. Murphy.

This evidence is undisputed, and we believe it sufficient to warrant the finding of fact to which objection is made in this mo-tion for a rehearing. Indeed, we are of the opinion that, when this testimony is read in the light of the indorsement made on the bond a few days after it was executed, which indorsement is set out in the original opinion, no other conclusion can be drawn than that stated in the finding of fact, of which this complaint is made.

The motion for rehearing has been carefully considered, and, as it presents no new matter, is overruled.